Peter **IERARDI**, and Angela Ierardi

v.

**LORILLARD, INC.**, et al.

Civ. A. No. 90–7049.

United States District Court, E.D. Pennsylvania.

Oct. 28, 1991.

Laurence H. Brown, Steven J. Cooperstein, Howell K. Rosenberg, Brookman, Rosenberg, Brown & Sandler, Thomas F. Johnson, Daniel G. Childs, Johnson & Childs, Philadelphia, Pa., for plaintiffs.

Matthew A. White, Franklin Poul, David I. Bookspan, Wolf, Block, Schorr and Solis-Cohen, Philadelphia, Pa., Walter L. Cofer, William S. Ohlemeyer, Gary R. Long, Pat-

---

rick M. Sirridge, David K. Hardy, Shook, Hardy and Bacon, Kansas City, Mo., for defendant Lorillard, Inc.

Robert V. Dell'Osa, Kenneth C. Frazier, Drinker, Biddle & Reath, Kim R. Tulsky, Mann, Ungar & Spector, Philadelphia, Pa., Andrew J. Mc Elaney, Jr., Stephen J. Brake, Nutter, Mc Clennen & Fish, Boston, Mass., for defendant Hollingsworth & Vose Co.

Edward J. Wilbraham, Philadelphia, Pa., for movants.

## MEMORANDUM

NEWCOMER, District Judge.

*Factual Background:*

The above-captioned matter is a negligence/products liability action. Between 1952 and 1956, P. Lorillard, Inc., predecessor to defendant Lorillard, Inc., manufactured Kent cigarettes with an asbestos-containing filter—the "Micronite" filter. Defendant Hollingsworth & Vose ("H & V") supplied the asbestos containing filter media to P. Lorillard. Plaintiff Peter Ierardi now brings this lawsuit alleging that he contracted mesothelioma as a direct result of his use of Kent cigarettes during the period of 1953–1956.

Plaintiffs have served interrogatories on defendant H & V requesting information regarding H & V's developing knowledge of the dangers of asbestos and testing of the Micronite filter from the time the product was first introduced to the present. H & V objects to this discovery on grounds of relevancy. Clearly, defendant's state of knowledge during the period from 1951–1957 as to the potential hazards of asbestos, and as to any testing of the Micronite filter is relevant to the issue of whether defendant was negligent in manufacturing a cigarette filter containing asbestos during the same period. With regard to H & V's knowledge after that date, however, the question of relevancy can only be answered after the court addresses the question whether a "continuing duty to warn" exists under the circumstances of this case. Accordingly, in this memorandum, I examine plaintiff's theory of liability based on defendant's alleged breach of a continuing duty to warn.

The Supreme Court of Pennsylvania has not yet decided the question whether a post-sale duty to warn may be imposed on a manufacturer.[1] The Pennsylvania Superior Court, has, however, in *Walton v. Avco Corp.*,[2] spoken on this issue and has imposed a post-sale duty to warn in limited circumstances.

In *Walton*, Hughes, a helicopter manufacturer, learned from the supplier of the helicopter engine that the oil pumps in the engines of the helicopters were defective. *Walton*, 557 A.2d at 375. Hughes, however, knowing the consequences of engine

---

1. Plaintiff's urge this court to adopt the holdings of *Johns–Manville Sales Corp. v. Janssens*, 463 So.2d 242 (Fla.App. 1 Dist.1984) and its progeny. *Janssens* and the cases adopting *Janssens* have imposed a "continuing duty to warn" of the dangers of asbestos in cases against asbestos manufacturers. The reasoning for the imposition of such an obligation, however, appears to be based on punitive considerations rather than compensatory considerations. Essentially, the *Janssens* court held that because Johns–Manville Corp. withheld information about the harmful effects of asbestos exposure from the public, evidence of its continued concealment after the period of plaintiff's exposure to asbestos was relevant to a continuing duty to warn claim. The only analysis in the opinion regarding imposition of a post-sale obligation is that "Johns–Manville's intent to avoid public disclosure and cover up the health hazards caused by exposure to its asbestos products … [and] Johns–Manville's continued malice, evil intent, and reckless and wanton disregard for the health and safety of those using its products" *Id.* at 256, was properly at issue on plaintiff's continuing duty to warn claim. There is no discussion of proximate causation of plaintiff's injuries or the reasonableness of imposing such a duty. Similarly, cases following *Janssens* justify the imposition of a continuing duty to warn against asbestos manufacturers in a discussion of the "conspiracy" of several asbestos manufacturers to prevent the hazards of asbestos from becoming known, while simultaneously continuing to manufacture and actively market asbestos. I decline to follow this line of case law, as there is little reasoning to support such an imposition here and because I find it inconsistent with current Pennsylvania law.

2. 383 Pa.Super. 518, 557 A.2d 372 (1989) *appeal granted Walton v. Avco Corp.*, 524 Pa. 599, 568 A.2d 1249 (1989).

failure, failed to pass this information on to his customers. Plaintiff's decedent's helicopter was brought in for servicing after Hughes had received the warning from the supplier but Hughes made no mention of the defect. *Id.* Shortly afterward, the oil pump in the helicopter failed and the helicopter crashed, killing the plaintiff's decedent. *Id.* The Superior Court found, that in light of the circumstances, Hughes was strictly liable for failing to issue a post-sale warning. *Id.*

In imposing on Hughes a post-sale duty to warn, the *Walton* court relied on the Wisconsin Supreme Court's analysis in *Kozlowski v. John E. Smith's Sons Co.,* 87 Wis.2d 882, 275 N.W.2d 915 (1979). In *Kozlowski,* plaintiff's decedent was fatally injured by ammonia inhalation while cleaning a sausage stuffing machine. After the sale of the machine in question, the manufacturer had developed a safety valve that could have prevented the accident. A representative of the manufacturer had made two visits to the plant after the safety valve had become standard equipment on all new machines, but did not give any post-sale warning, or notice of the availability of the safety valve. *Id.* In finding a post-sale obligation the court noted, that "[t]he sale of the sausage stuffer is to a limited market wherein the manufacturer would know of all companies that own its product." *Kozlowski,* 275 N.W.2d at 923–24 *quoted* in *Walton,* 557 A.2d at 379. Indeed, in imposing a post-sale duty to warn, the *Walton* court itself noted that:

> [a] helicopter is not a household good, commonly found in almost any home in

this country. It is instead a unique and costly product which is manufactured, marketed and sold to a specialized group of consumers. We believe that Hughes would have communicated safety information and service instructions with relative ease by contacting purchasers of its helicopters, as well as authorized service centers through the mail or otherwise.

*Walton,* 557 A.2d at 379.

■ In imposing on manufacturers post-sale obligations to warn of, or to correct defects, courts, have primarily focused on four factors: (1) whether the manufacture assumes a duty to correct a defect but fails to carry out that duty;[3] (2) whether the defect is remediable, (3) whether the product is in continued use, (4) whether the product users can be easily identified.[4]

■ Here, there is no evidence that H & V assumed a duty to correct any alleged defect. Indeed, H & V continues to contend that no asbestos escaped the Micronite filter. Further, the alleged defect in this instance is not a remediable one. The cigarettes cannot be recalled. Cigarettes are a fungible good. Moreover, the tragedy of this particular case is that even if Lorillard and H & V had managed to warn Peter Ierardi that Kent cigarettes were manufactured with an asbestos containing filter, and that the filter was defective in that the asbestos fibers in the filter escaped from the filter, the post-sale warning would not have prevented Peter Ierardi's illness.

Peter Ierardi has been diagnosed as having mesothelioma. By the admission of

---

**3.** [in that the manufacture develops a modified part specifically to correct a product defect or provides a remedy for the defect, but does not make any attempt to provide for the installation of the modified part or correction of the defect]. *See, e.g., Bell Helicopter Co. v. Bradshaw,* 594 S.W.2d 519 (Tex.App.1979) [where Bell, a helicopter manufacturer, after discovering that its tail rotor blades could fail in flight if the blades were not properly maintained, developed a tail rotor blade correcting the defect, the court held that Bell assumed the duty to improve the defective rotor blades, and that "Bell had an obligation to complete the remedy by using reasonable means available to it," *Id.* at 532, i.e. Bell had an obligation to "cause replacement" of the

defective systems. *Id.* at 532. In imposing the post-sale obligation on Bell the court emphasized the "unique relationship" between Bell's authorized service stations and Bell]; *see also Gracyalny v. Westinghouse Electric Corp.,* 723 F.2d 1311 (7th Cir.1983) [where Westinghouse discovered a design defect in its circuit breaker and provided free baffles to correct the defect, the court reversed summary judgment in favor of Westinghouse stating that, "given the serious nature of a circuit breaker malfunction, a jury could determine that Westinghouse itself should have undertaken to install the baffles." *Id.* at 1321].

**4.** *See Walton,* 557 A.2d 372; *Kozlowski,* 275 N.W.2d 915.

plaintiff's own expert, mesothelioma is untreatable and incurable. Even if a warning was warranted and that warning was given, the post-sale warning would not have had any affect on plaintiff's condition. Accordingly, the post-sale failure to warn could not be considered a proximate cause of plaintiff's injuries. Thus, any claim pursuant to a continuing duty to warn must fail. Moreover, this is clearly not a case where a post-sale warning would have prevented any harm caused by the alleged defect, as the product was not in continued use at the time such a warning could have been issued.

Finally, given the extent of the market for Kent cigarettes, neither Lorillard nor H & V could have possibly issued a post-sale warning to every person who smoked Kent cigarettes during the period between 1952 and 1956.

The court further notes that the Pennsylvania Superior Court has given cautionary instructions regarding the application of the "continuing duty" doctrine. Indeed, the court stated in *Walton*, that, "[i]n our desire to compensate the persons who have been injured by defective products, we should not be willing to impose upon product suppliers legal duties that are unreasonable, and therefore, effectively unobtainable." *Walton v. Avco Corp.*, 557 A.2d 372, 380. To impose a post-sale duty to warn on a strict products liability theory, where the defect is not remediable, where the product is no longer being manufactured and is no longer in use, and where it would be impracticable to personally notify every consumer of the product, would be a perversion of the doctrine as it has been adopted by the Pennsylvania courts.[5] A duty to warn under such circumstances is not only overly burdensome, but is also futile.

In light of the foregoing, I find that there is no basis upon which to impose upon defendant a continuing duty to warn.

Accordingly, I find that evidence of H & V's knowledge regarding the dangers of asbestos after 1957 would be irrelevant to this cause of action.

An appropriate order follows.

## ORDER

AND NOW, this 28th day of October, 1991, upon consideration of the Plaintiff's Supplemental Brief on defendant's continuing duty to warn, and upon consideration of the Motions of Defendant Lorillard, and defendant Hollingsworth & Vose to Dismiss Plaintiff's Continuing Duty to Warn Claim, consistent with the foregoing memorandum opinion, it is hereby ORDERED that the Motions of defendant Lorillard, Inc. and defendant Hollingsworth & Vose to Dismiss Plaintiff's Continuing Duty to Warn Claim are GRANTED.

AND IT IS SO ORDERED.

---

5. The court notes further that in the case of *Shires v. Celotex Corp. et al.*, No. 85–7141 (E.D.Pa.1985) Judge Van Artsdalen, after considering *inter alia* that such discovery might be relevant under a "continuing duty to warn" claim, granted defendant American Tobacco

Company's motion for a protective order vacating plaintiff's notice of deposition regarding the tobacco company's knowledge and conduct after plaintiff's decedent had stopped smoking defendant's cigarettes.